IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE T. VICKERS, JR., JD-4279, )
    Petitioner, )
     )
    v. ) 2:15-CV-432
     )
MICHAEL WENEROWICZ, et al., )
    Respondents. )

MEMORANDUM

Mitchell, M.J.:

    George T. Vickers, Jr. an inmate at the State Correctional Institution at Graterford has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be granted and the petitioner released from custody unless he is retried within one hundred-twenty (120) days of this date.

    Vickers is presently serving a seven to fourteen year sentence imposed following his conviction by the court of aggravated assault, reckless endangering, disorderly conduct and harassment at CP 63-CR-359-2008 in the Court of Common Pleas of Washington County, Pennsylvania. This sentence was imposed on July 31, 2009.[1]

    An appeal was filed in the Superior Court in which the sole issue was "the evidence was insufficient as a matter of law to establish the crime of aggravated assault where the actor/defendant struck the victim with his fist one time."[2] On August 4, 2010, the Superior Court affirmed the judgment of sentence and on January 19, 2011 allowance of appeal was denied by the Pennsylvania Supreme Court.[3]

    On November 17, 2011, Vickers filed a post-conviction petition and relief was denied on December 12, 2012.[4] An appeal to the Superior Court was filed in which the issues presented were:

---

[1] See: Petition at ¶¶ 1-6.
[2] See: Exhibit 24 to the Motion to dismiss.
[3]: Id. at Exhibits 31 and 33.
[4] Id. at Exhibits 34 and 45.

1

1. Whether there was ineffective assistance of counsel/Constitutional violations – for Trial Counsel's failure to appropriately investigate and impeach the victim as to his level of impairment/intoxication at the time of the alleged incident.

2. Whether there was ineffective assistance of counsel when Trial Counsel failed to preserve issues for appeal: Failure to object to introduction of hearsay testimony and to permit the unreliable testimony of the purported victim.

3. Whether there was ineffective assistance of counsel when Trial Counsel failed to challenge the creditability of Commonwealth witnesses and formulate a defense.

4. Whether there was ineffective assistance of counsel by Trial Counsel and improper obstruction by the Court and Commonwealth Officials of Appellant's right to a Trial by Jury.

5. Whether there was ineffective assistance of counsel by Trial Counsel and Constitutional violations for failure to provide Appellant's rights to a trial by jury or to permit him to knowingly, voluntarily, and intelligently waive said rights.[5]

The denial of post-conviction relief was affirmed by the Superior Court on July 23, 2014 and leave to appeal was denied by the Pennsylvania Supreme Court on December 16, 2014.[6]

The instant petition was executed on March 17, 2015 and received in this Court on March 31, 2015. Because neither the requisite filing fee nor forma pauperis application accompanied the petition, it was dismissed on April 1, 2015 pending the submission of the necessary documents. The filing fee was received on April 21, 2015 and the petition was docketed by the Clerk.

After the respondents' motion to dismiss was denied on June 17, 2015 (ECF No.22), there ensued a complete dereliction of duty by the respondents who failed to defend this litigation with any degree of diligence. Eventually, on August 31, 2015 the writ was granted for failure of the respondents to oppose it. (ECF No.27). Finally, after this dramatic hiatus, the respondents moved for reconsideration although they conceded that they had no meritorious excuse for neglecting to defend this matter. (ECF No.32). Because of the troubling posture of this case and over petitioner's objection we granted reconsideration and an answer was filed. (ECF No.32). We now address the petition on the merits.

In his petition, Vickers contends he is entitled to relief on the following grounds:

---

[5] Id. at Exhibit 63 p.5 (citing to appellant's brief).
[6] Id. at Exhibits 61 and 63.

1. Ineffective assistance of counsel resulting in violations of the Fifth, Sixth and Fourteenth Amendments in that the court proceed[ed] with a bench trial without obtaining a jury trial waiver.

2. Ineffective assistance of counsel resulting in violations of the Fifth, Sixth and Fourteenth Amendment by introducing petitioner's criminal record without any strategic trial purpose.

3. Ineffective counsel resulting in violations of the Fifth, Sixth and Fourteenth Amendments by failing to properly raise a sufficiency of the evidence argument to meet the requirements for an aggravated assault conviction and failing to investigate the victim's ability to recall the events.

4. Ineffective assistance of and judicial bias in violation of the Fifth, Sixth and Fourteen Amendments as a result of permitting the introduction of alleged "facts" which were never introduced at trial.

Petitioner raised his first issue concerning the waiver of jury trial in his post-conviction appeal as his fourth and fifth issues. While not in the context of ineffective assistance of counsel he raised his third issue, i.e., insufficiency of the evidence in his direct appeal as well as an ineffective assistance of counsel claim in his post-conviction appeal. The remaining two issues, numbers 2 and 4 were never raised in the courts of the Commonwealth.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez,

3

supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995). If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995). In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because no such showing is made here, the petitioner has failed to exhaust the available state court remedies on his second and fourth issues and no further consideration of those two issues is warranted here as a result of this procedural default.

The background to this prosecution is set forth in the July 23, 2014 Memorandum of the Superior Court:

> This case stems from an incident that took place in the town of Finleyville, Pennsylvania on the evening of November 9, 2007 involving the Defendant, the victim Scott Lambert, and a third, ultimately unidentifiable individual….
>
> Mr. Lambert testified that he arrived at the Finleyville Moose, a local bar, around 6:00 pm on the night in question in order to socialize with friends. He proceeded to consume one bottled Miller Lite per hour while socializing with friends, up to sometime between 10:00 and 11:00 pm when he left the bar in order to catch a bus back to his home in Monongahela, Pennsylvania.
>
> After arriving at the bus stop around 11:00 pm, Mr. Lambert decided to walk across the street and enter another local bar, Roy's by the Track (hereinafter "Roy's"), in order to escape the cold weather. Upon entering Roy's, Mr. Lambert noticed that his ex-girlfriend, Angle Killian, was sitting at the bar with the Defendant, who as far as Mr. Lambert knew at the time, was Ms. Killian's new boyfriend. Mr. Lambert proceeded to sit at the corner of the bar, approximately fifteen (15) to twenty (20) feet from Ms. Killian and Defendant, purchase a bottled Miller Lite, and obtain change in order to pay for his bus ride.

4

Mr. Lambert was inside Roy's for fifteen (15) to thirty (30) minutes, and while there, he "wanted nothing to do with" the Defendant, did not speak to him, and "just ignored him" while inside the bar. After being asked if he recalled whether Defendant and Ms. Killian were yelling at him and "using cuss words" while inside Roy's, Mr. Lambert testified that he did recall such behavior. Once finished with his beer, Mr. Lambert left the bar between 11:30 pm and 11:45 pm in order to catch the last bus back to Monongahela. At this point, the incident giving rise to the case at hand occurred.

Mr. Lambert testified that while waiting alone at the bus stop, in an area well-lit by streetlights, and approximately forty (40) to fifty (50) feet from the bar from which he had just departed, he was struck from behind. Mr. Lambert did not see or hear anyone approaching him prior to his being struck, but due to his positioning at the bus stop, he could only see the lights emanating from Roy's out of the corner of his eye. Defendant testified at trial that he had "gotten up and walked out the door behind [Lambert]."

Mr. Lambert testified that he was struck once from behind in an open-palmed shove-like manner on his "upper neck, shoulder and back area" causing him to "stumble." He testified that he did not know who shoved him from behind. After stumbling as a result of this shove, Mr. Lambert "looked up" and "saw George Vickers," who was "a step and a half away." Within a matter of seconds of the initial shove from behind, Mr. Lambert was struck over his right eye by what he thought was a closed fist. After being struck over the right eye, he fell, unconscious, to the ground. When police responded to the scene, approximately forty-five (45) minutes after the assault, Mr. Lambert was still unconscious. When asked if he could see who struck him with the blow over his eye, Mr. Lambert clearly and unequivocally responded, "[y]es, it was George Vickers."

According to the hospital and medical records from Mon Valley Hospital, Jefferson Memorial Center, and UPMC-Shadyside entered into evidence without objection, and being stipulated to by all parties as the true and correct medical records of Mr. Lambert, Mr. Lambert suffered [severe] injuries as a result of the punch delivered by Defendant. In addition to being knocked unconscious for at least forty-five (45) minutes as a result of the blow to the area above his right eye, Mr. Lambert sustained a fractured skull in two places and suffered brain hemorrhaging in two areas. He also sustained bruising of the brain in a third area, suffered soft tissue trauma around the skull, and was in a coma for four (4) days.

With respect to residual injuries, Mr. Lambert's quality of life has diminished severely as a result of Defendant's actions. He suffers from memory loss and constant migraine headaches. His driving has been limited to twenty (20) minute intervals, and he may not drive in congested area[s]. he often loses his train of thought, cannot focus well, and is often unable to sleep. He has lost his sense of smell and taste. Furthermore, Mr. Lambert is unable to work for his family

business that prior to this assault, he owned and operated. Taken together, Mr. Lambert suffers from lifetime permanent injuries, is permanently disabled, receives disability benefits, and can no longer live an independent life.[7]

Against this background we review the petitioner's surviving claims.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

For simplicity, we first address petition's contention that counsel was ineffective for failing to challenge the sufficiency of the evidence to support his conviction of aggravated assault. Pennsylvania law provides "a person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). The standard employed by federal courts to review such a claim is whether based on the evidence presented any rational fact-finder could determine guilt beyond a reasonable doubt. Coleman v. Johnson, 132 S.Ct. 2060 (2012). From the recitation above, it is clear that the evidence presented could

---

[7] Id. at Exhibit 63 pp.1-3.

6

support such a conviction and counsel cannot be deemed to have been ineffective for failing to raise a meritless argument. Real v. Shannon, 600 F.3d 302 (3d Cir. 2010).

Petitioner also argues that counsel was ineffective for proceeding with a non-jury trial when a valid jury waiver did not exit. Indeed, the Commonwealth concedes that no written or oral waiver exists.[8]

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury…" This amendment is applicable to all state prosecutions except petty offenses. Duncan v. Louisiana, 391 U.S. 145, 149 (1968)("we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which – were they to be tried in a federal court – would come within the Sixth Amendment's guarantees").

Pennsylvania Rule of Criminal Procedure 620 provides:

> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

See: Com. v. Sanchez, 614 Pa. 1, 52 (2011) cert. denied 133 S.Ct. 122 (2012)("a criminal defendant may obtain a bench trial only by **waiving** the right to a jury trial")(emphasis in original). The Pennsylvania Supreme Court explained in Com. v. Houck, 596 Pa. 683 , 694-695, cert. denied 555 U.S. 1056 (2008) that a valid waiver of jury trial requires that at the least, the defendant be informed,

> that the jury be chosen from members of the community (i.e., a jury of one's peers), that the accused be allowed to participate in the selection of the jury panel, and that the verdict be unanimous.

While federal courts do not review matters of state law, Swarthout v. Cooke, 131 S.Ct. 859 (2011), we note that under federal law a valid waiver of a jury trial likewise requires an express intelligent waiver by the defendant. Patton v. United States, 281 U.S. 276 (1930). See also: Adams v. United States ex rel. McCann, 317 U.S. 269, 277-278 (1942). Indeed, F.R.Crim

---

[8] See: Answer at p.38.

P. 23(a) requires that for a valid waiver to occur, the defendant must execute that waiver in writing, the government must agree and the court must approve the waiver.

In reviewing Vickers' claim the Superior Court wrote:

> The Commonwealth introduced evidence at the [Post-conviction] hearing that Appellant was familiar with the criminal justice system and his right to a jury trial. On cross-examination, Appellant admitted that he previously pled guilty to a first-degree felony. In connection with that plea, he completed a guilty plea form, which recited what a jury trial entailed. Appellant, denied, however, that he had read the form, although he signed and dated the form indicating that he understood his right to a jury trial.
>
> Trial counsel testified to the following. Appellant's case had already been scheduled for a non-jury trial when it was assigned to him. Counsel discussed with Appellant his right to a jury trial on several occasions, and explained the tactical advantages of proceeding to a non-jury trial rather than a jury trial. In that regard, counsel advised Appellant that he had a chance of winning on the aggravated assault charge at a bench trial because the narrow legal issue involved in this one-punch case "might be lost on a panel of jurors" but appreciated by a judge. Based on the advice and tactics provided, Appellant chose to proceed non-jury. Counsel re-visited the subject of a jury trial with Appellant on the scheduled day for the non-jury trial. He advised Appellant that he still had a right to ask for a jury trial, but Appellant wanted to go forward. Counsel represented that Appellant knew the difference between a jury and non-jury trial; that he had prior experience with the criminal justice system, and that Appellant never indicated on the day of trial that he wanted a jury trial. The PCRA court found counsel rather than Appellant credible… We have no basis to disturb that determination which is supported by the record.[9]

We too have reviewed the transcript of the post-conviction hearing and conclude that the trial court's determination of credibility is a sustainable factual determination and not subject to review here. Felkner v. Jackson, 131 S.Ct. 1305 (2011).

However, that is not the issue here. Rather, we are asked to determine from the record whether or not the petitioner knowingly waived his Constitutional right to a trial by jury. Interestingly, the PCRA court acknowledged this record deficiency when it wrote:

> The Court regrets its failure *sua sponte* to conduct an on-the-record oral colloquy regarding the waiver of a jury trial before beginning this non-jury trial with George Vickers but counsel never requested the Court to conduct an on-the-record oral waiver colloquy. According to *Commonwealth v. Mallory*, 941 A.2d

---

[9] See: Exhibit 33 to the motion to dismiss at pp. 12-13.

696 (Pa. 2008), a waiver colloquy is a procedural device – it is not a constitutional end or a constitutional right.[10]

However, the Court in Mallory further clarified that "waivers can occur by conduct or by implication, as in the case of a criminal trial conducted *in absentia* after the defendant fails to appear." 941 A.2d at 697. Clearly this was not the situation in the present case.

A waiver of a Constitutionally assured right cannot be inferred from a silent record. Indeed "the Constitution requires that any waiver of that right be the product of the voluntary exercise of free will." Pazden v Maurer, 424 F.3d 303, 313 (3d Cir. 2005), citing Faretta v. California, 422 U.S. 806, 835 ( 1975).

Since there is nothing in the record to support the conclusion that a valid waiver of Vickers' right to a jury trial occurred, and indeed the respondents concede this point, the determination by the state courts was "contrary to or involved an unreasonable application of clearly established Federal law" 28 U.S.C. § 2254(d)(1) and is unsustainable here.

For this reason, we conclude that counsel was Constitutionally deficient; that as a result the petitioner was prejudiced and as a result he is entitled to relief here. For this reason the petition will be granted.

An appropriate Order will be entered.

Filed: November 19, 2015           s/ Robert C. Mitchell
                                                       United States Magistrate Judge

---

[10] Id. at Exhibit 46 at p.8. Interestingly, in Commonwealth v. Houck, 596 Pa. 683, 694 (2008) the Court explicitly wrote:

> [W]e note that criminal defendants have a constitutionally guaranteed right to a trial by jury. U.S. Const. amend. VI. In all cases, a defendant may waive a jury trial with approval by the judge of the court in which the case is pending. Pa.R.Crim.P. 620. To be valid, it is well settled that a jury waiver must be knowing and voluntary, and the accused must be aware of the essential ingredients inherent to a jury trial…